UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

WIZARA, LLC,

                              Plaintiff,

     -against-                                                    5:17-CV-424 (LEK/TWD)

SMARTLINK COMMUNICATION, SPA,

                              Defendant.

_____

**MEMORANDUM-DECISION AND ORDER**

**I.      INTRODUCTION**

Plaintiff Wizara, LLC, removed this action against Defendant Smartlink Communication,

SpA, from state court on April 14, 2017. Dkt. No. 1 ("Notice of Removal"); see also Dkt. No. 2

at 1–7 ("Amended Complaint"). On June 20, 2017, Defendant filed an answer. Dkt. No. 14

("Answer"). On June 22, 2023, the Court struck Defendant's Answer. Dkt. No. 95 ("June 2023

Order"). Now before the Court is Plaintiff's motion for default judgment, which was filed on

July 7, 2023. Dkt. No. 89-9 ("Motion" or "Motion for Default Judgment").

For the reasons that follow, Plaintiff's Motion is granted.

**II.     BACKGROUND**

Plaintiff is a domestic limited liability company organized under the laws of the State of

New York with its principal place of business located in Liverpool, New York. See Am. Compl.

¶ 1. Defendant is a foreign corporation incorporated under the laws of Algeria, with its principal

place of business in Algiers, Algeria. See id. ¶ 2. On or about January 5, 2003, the parties entered

into a contract to provide "goods, wares and services in the nature of hardware and installation

relating to internet services, VOIP and wireless broadband in the country of Algeria." Id. ¶¶ 3–4;

see also Dkt. No. 2 at 9–41 ("CHASS Agreement").

Plaintiff asserts that the combined value of the goods and services that it provided Defendant was $8,667,980.00, see Am. Compl. ¶¶ 8–9, and it provides correspondence from Defendant to this effect, see Dkt. No. 2 at 42–43 ("Extension Request"); id. at 44–45 ("Commitment Letter"). However, in its now-stricken answer, Defendant has denied liability and asserted that Plaintiff's filings are fabricated. See Answer at 1–2.

From April 2017 through July 2022, the parties did not file any dispositive motions, despite seeking and received various extensions to do so. See, e.g., Dkt. Nos. 54, 55. On July 11, 2022, Defendant's counsel filed two motions to withdraw, see Dkt. Nos. 72, 73, citing difficulty communicating with their client and the long dormancy of this case, see Dkt. No. 73-1 at 2. On August 17, 2022, the Court granted these motions and ordered Defendant to obtain new counsel within sixty days, noting that "corporate parties may not appear pro se." Dkt. No. 82 ("August 2022 Order"). Defendant has neither obtained new counsel nor otherwise appeared in this case since the August 2022 Order was filed.

On November 9, 2022, Plaintiff filed a motion to "impos[e] sanctions/and or a Default Judgment." Dkt. No. 85. The Court denied this motion, noting that Plaintiff was required to include a memorandum of law with its request for sanctions. See Dkt. No. 87. On May 22, 2023, Plaintiff refiled its motion in compliance with the Court's directive. See generally Dkt. No. 89.

On June 22, 2023, the Court granted Plaintiff's request to strike Defendant's answer, thus allowing Plaintiff to obtain an entry of default. See June 2023 Order. On June 28, 2023, Plaintiff obtained such entry, see Dkt. No. 97, allowing the Court to consider Plaintiff's Motion for Default Judgment.

III.    LEGAL STANDARD

After the clerk has filed an entry of default against a party that has failed to plead or

otherwise defend, a court may enter default judgment upon application of the opposing party.

See Fed. R. Civ. P. 55(b). Default judgment is an extreme sanction, and decisions on the merits

are favored. See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). However, default judgment

is ordinarily justified when a party fails to respond after having received proper notice. See

Bermudez v. Reid, 733 F.2d 18, 21 (2d Cir. 1984). After an entry of default has been entered, all

the well-pleaded allegations in a complaint pertaining to liability are deemed true. See

Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir.

1997) (recognizing that the factual allegations in the complaint, except those relating to damages,

are deemed true after default).

However, a court cannot take allegations in a complaint regarding damages as true. See

Credit Lyonnais Sec. (USA), Inc., v. Alcantara, 183 F.3d 151, 154–55 (2d Cir. 1999). After

establishing liability, a court must conduct an inquiry to ascertain the amount of damages with

reasonable certainty. Transatlantic, 109 F.3d at 111. To determine damages in the context of a

default judgment, "[t]he court may conduct hearings or make referrals" as it deems necessary

and proper. Fed. R. Civ. P. 55(b)(2). However, "it [is] not necessary for the District Court to hold

a hearing, as long as it ensured that there [is] a basis for the damages specified in the default

judgment." Fustok v. ContiCommodity Serv., Inc., 873 F.2d 38, 40 (2d Cir. 1989); see also

Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991); Bricklayers and Allied

Craftworkers Local 2, Albany, N.Y. Pension Fund v. Ne. King Constr. Co., No. 06-CV-0806,

2009 WL 1706586, at *1 (N.D.N.Y. June 16, 2009).

## IV.    DISCUSSION

### A.  Statute of Limitations

The CHASS Agreement provides that it shall be governed by the laws of New York and Algeria. See CHASS Agreement § 8.12. Under New York law, the statute of limitation for breach of contract is six years, which ordinarily starts at the time of breach. See Airco Alloys Div., Airco Inc. v. Niagara Mohawk Power Corp., 430 N.Y.S.2d 179, 186 (N.Y. App. Div. 4th Dept. 1980). However, Plaintiff alleges an ongoing breach of the parties' agreement between 2003 and 2006. See Am Compl. ¶ 10; see also Dkt. No. 2 at 52–62.  Accordingly, under New York's continuing-violation doctrine, Plaintiff's combined breach of contract claims accrued on the date of the final breach. Miller v. Metro. Life Ins. Co., 979 F.3d 118, 122 (2d Cir. 2020) (quoting Stalis v. Sugar Creek Stores, Inc., 744 N.Y.S.2d 586, 587 (N.Y. App. Div. 4th Dept. 2002)) ("[W]here a contract provides for continuing performance over a period of time, each breach may begin the running of the statute anew such that accrual occurs continuously.").

The last invoice provided by Plaintiff is dated September 25, 2006. See Dkt. No. 2 at 62. According to the terms of the contract, payment of this invoice was due sixty days later. See CHASS Agreement § 5.1.4 ("Payment . . . shall be made within 60 days following receipt of CHASS, LLC's Remuneration Invoice for the phase work.").[1] Accordingly, payment for Plaintiff's final invoice was due by November 24, 2006. Therefore, under the doctrine of

---

[1] Plaintiff asserts that, under the contract, payment became due within thirty days of each invoice. See, e.g., Am. Compl. ¶¶ 5, 6. However, these assertions appear to contradict Section 5.1.4 of the CHASS Agreement, which states that payment must be provided within sixty days of receipt of each invoice. Section 5.1.2 of the CHASS Agreement, which Plaintiff cites in its Amended Complaint, states that CHASS must provide its *invoice* within thirty days of the end of each work period.

continuing violation, Plaintiff's claims accrued on this date, and Plaintiff had until November 24, 2012, to bring its claims against Defendant.

However, Plaintiff alleges that, on two separate occasions, Defendant reaffirmed its intent to pay its debt. See Am. Compl. ¶¶ 11–12; see also Extension Request; Commitment Letter. In the first letter, dated July 14, 2009, Defendant acknowledged its debt and requested an extension of time to pay it. See Am. Compl. ¶ 11; see also Extension Request. In the second letter, dated March 19, 2013, Defendant acknowledged the debt and indicated its intent to pay the principal in full by the end of 2015. See Am. Compl. ¶ 12; see also Commitment Letter.

Under New York law, a "a debtor's acknowledgement of indebtedness" may "restart the running of a period of limitations" to collect that debt. Bainbridge Fund Ltd. v. Republic of Argentina, 37 F.4th 847, 852 (2d Cir. 2022) (citations and quotation marks omitted); see also N.Y. Gen. Oblig. Law § 17-101 (codifying this rule). In order to restart the statute of limitations, such an acknowledgment "must be in writing," "made under such circumstances that an express promise to pay the debt may be fairly implied," and "must contain nothing inconsistent with an intention on the part of the debtor to pay it." Bainbridge, 37 F.4th at 852 (citations and quotation marks omitted).

Here, the letters furnished by Plaintiff satisfy these requirements. First, they are both in writing and apparently signed by an officer of Defendant. See Extension Request; Commitment Letter. Second, a promise to pay is fairly implied by each letter; the extension request in the first letter may be fairly construed as an implied promise to pay the debt by the new deadline, see Extension Request, while the second letter states that Defendant will "honor and pay the total amount" of the debt by the "end of year 2015," Commitment Letter. Third, neither letter contains any language that is inconsistent with Defendant's stated intent to pay the underlying debt.

Therefore, under New York law, each letter has reset the statute of limitations for Plaintiff's breach of contract claims.

Plaintiff brought this action in state court "on or about" February 17, 2016. Notice of Removal ¶ 1. Because it brought suit less than six years after the Commitment Letter, Plaintiff's breach of contract claims are not barred by New York's statute of limitations.

### B. Default Judgment

"In determining whether to grant a motion for default judgment, courts consider three factors: (1) whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the nondefaulting party would suffer as a result of the denial of the motion for default judgment." Capital Inv. PTY, LLC v. Onestone Capital, LLC, No. 23-CV-4487, 2023 WL 7004164, at *1 (S.D.N.Y. Oct. 24, 2023) (citing Kelly Toys Holdings, LLC v. alialialiLL Store, 606 F. Supp. 3d 32, 48 (S.D.N.Y. 2022)) (internal quotation marks omitted).

### 1. Willfulness

The Court has no trouble concluding that Defendant's breach is willful. It is "well settled that corporations can only appear in court through an attorney, and may not proceed *pro se*." Hounddog Productions, L.L.C. v. Empire Film Group, Inc., 767 F. Supp. 2d 480, 486 (S.D.N.Y. 2011). In other cases within the Second Circuit, courts have denied default judgment where a defendant has otherwise attempted to respond to the court's orders. See, e.g., Pecarsky v. Galaxiworld.com Ltd., 249 F.3d 167, 172 (2d Cir. 2001) ("Aside from not appearing in court, the record shows that appellants were in constant contact with the district court. Appellants were not ignoring the court's orders; instead, they made repeated efforts to inform the court of their difficulties in finding new counsel. Galaxiworld's inability to find new counsel and resultant

inability to appear in court is understandable when the circumstances are considered."). Here,

however, Defendant has not offered any explanation for its failure to comply with the Court's

order that Defendant retain new counsel, nor has Defendant contacted the Court in any other way

since the motions to withdraw were filed in July 2022. See Dkt. Nos. 72, 73. Under such

circumstances, default judgment is warranted. See Hounddog Productions, 767 F. Supp. 2d at

486 ("Since its counsel withdrew in September, 2010, Empire has taken no steps to retain

counsel or comply with the Court's discovery orders. It was required to advise the Court by

October 10, 2010 that it had retained new counsel. It did not do so, and now, four months later, it

has continued in its non-compliance. . . . Simply put, Empire has failed to 'otherwise defend' the

action, and therefore the Clerk should be directed to enter its default pursuant to Rule 55(a).");

see also Dkt. No. 82 (warning Defendant that "[f]ailure to notify the Court of such information

pertaining to Defendant's new attorney within 60 days from the date of this Text Order may

result in sanctions including a default judgment against Defendant").

> 2. *Meritorious Defense*

In its now-stricken Answer, Defendant cited a list of various defenses, including, *inter*

*alia*, failure to state a claim upon which relief can be granted, lack of personal jurisdiction, an

expired statute of limitations, the absence of an enforceable contract, inadequate consideration,

and unclean hands. See Answer at 5–6. Considering that Defendant did not include any

elaboration for most of these defenses, the Court is unable to evaluate whether any of them are

meritorious. Cf. Krevat v. Burgers to Go, Inc., No. 13-CV-6258, 2014 WL 4638844, at *6

(E.D.N.Y. Sept. 16, 2014) (noting that, where a defendant fails to properly answer a complaint,

"a court is unable to make a determination whether the defendant has a meritorious defense to

the plaintiff's claims"). Despite this, the Court has evaluated the relevant statutes of limitations, and found that Plaintiff's claims are timely. See *supra* Part IV.A.

The only defense that Defendant has addressed in any detail is its argument that Plaintiff's exhibits are forgeries. See, e.g., Answer at 1–3. However, if Defendant had wished to pursue this defense, then Defendant was required to do so before a trier of fact. At this stage, the Court can evaluate neither the credibility of the parties nor the accuracy of their factual assertions. Furthermore, for the purpose of default judgment, the Court accepts as true all factual assertions other than those relating to damages. The Court is therefore unable to find that Defendant's allegations of fraud provide the basis for a meritorious defense.

Furthermore, the Court finds that Plaintiff has adequately stated the elements of breach of contract under New York law. "To state a claim for breach of contract under New York law, 'the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages.'" Orlander v. Staples, Inc., 802 F.3d 289, 294 (2d Cir. 2015) (quoting Johnson v. Nextel Commc'ns, Inc., 660 F.3d 131, 142 (2d Cir. 2011)). Here, Plaintiff has adequately alleged each element. Plaintiff asserts that a contract was formed between the parties, see Am. Compl. ¶ 3, that Plaintiff provided goods and services pursuant to that contract, see id. ¶¶ 8–9, that Defendant failed to perform, see id. ¶¶ 10–12, and that Plaintiff has suffered damages as a result, see id. ¶¶ 13–14.

Accordingly, the Court sees no meritorious defense that might preclude default judgment.

### 3. *Prejudice*

The Court has no trouble finding that a denial of default judgment would prejudice Plaintiff. This litigation involves substantial damages and has persisted for over eight years. Although "[d]elay standing alone does not establish prejudice," delay is "prejudicial if it

engenders a loss of evidence, discovery problems, or the opportunity for fraud and collusion."

U.S. Commodity Futures Trading Commn. v. McCrudden, No. 10-CV-5567, 2015 WL 5944229,

at *29 (E.D.N.Y. Oct. 13, 2015) (citations and quotation marks omitted). And if, hypothetically,

this case were to proceed to trial on the merits, the long delays in its resolution would hinder the

Court's ability to resolve issues of fact. Furthermore, Plaintiff's claims are likely time barred,

and so denial of its Motion will effectively prevent it from recovering on its claims. See Kelly,

606 F. Supp. 3d at 49 ("[D]enying Plaintiff's motion for default judgment would be highly

prejudicial to Plaintiff since Plaintiff would be left without any recourse to address Defaulting

Defendants' unlawful conduct."); see also; Barton LLP v. Maho Partners, LLC, No. 21-CV-

3108, 2022 WL 1948414, at *4 (S.D.N.Y. May 24, 2022) ("Denying Barton's motion for default

judgment would be highly prejudicial to Barton since it would be left without any recourse to

Maho's failure to honor its agreement and pay Barton monies owed for services rendered."),

report and recommendation adopted, No. 21-CV-3108, 2022 WL 2533111 (S.D.N.Y. July 7,

2022). The Court therefore finds that Plaintiff has adequately established prejudice.

In summary, because Defendant's breach was willful, and because Defendant is unlikely

to have any meritorious defenses, the Court finds that Plaintiff is entitled to default judgment.

This holding is consistent with the outcomes in other cases involving corporate parties who fail

to obtain counsel in a timely fashion. See, e.g., Eagle Assocs. v. Bank of Montreal, 926 F.2d

1305, 1306–1307, 1310 (2d Cir. 1991) (upholding ruling of default judgment where partnership

failed to find new counsel within three and a half months of withdrawal).

## C. Damages

The Second Circuit has held that it is "not necessary for [a] District Court to hold a

hearing" on the issue of damages for default judgment, so "long as it ensured that there [is] a

basis [in the record] for the damages specified" in its order. Fustok v. ContiCommodity Services, Inc., 873 F.2d 38, 40 (2d Cir. 1989). The invoices and CHASS Agreement filed by Plaintiff provide a sufficient basis for calculating damages, and so the Court declines to order a hearing pursuant to Federal Rule of Civil Procedure 55(b)(2).

In order to calculate Plaintiff's damages, the Court must make several assumptions. Wherever possible, the Court makes such assumptions in favor of Defendant.

Plaintiff asserts that the total outstanding principal, once all of Plaintiff's invoices became due, was $8,667,980.00. See Am. Compl. ¶¶ 8–9. This total is the sum of the following invoices: CH2556, which became due on November 24, 2005; CH2544, which became due November 11, 2005; CH2546, which became due January 8, 2006; CH2480, which became due April 22, 2004; CH2481, which became due January 31, 2005; CH2482, which became due May 1, 2005; CH2483, which became due June 19, 2005; CH2484, which became due September 26, 2005; CH2485, which became due March 26, 2006; CH2486, which became due June 24, 2006; CH2487, which became due July 24, 2006; CH2488, which became due September 23, 2006; and CH2489, which became due November 24, 2006. See Dkt. No. 2 at 46–62.

Plaintiff also asserts that Defendant paid down its principal by $437,094.08 during the years 2013 and 2014. See Am. Compl. ¶ 13. Because Plaintiff does not specify when these payments took place, the Court will assume, for the purposes of calculating interest, that the entire payment took place on January 1, 2013.

Plaintiff does not specify whether the interest is compounding or simple. For the purposes of calculating damages, the Court will assume that the interest rate is simple and applied on an annual basis.

Finally, the CHASS Agreement states that the interest rate shall be "equal to the Prime Rate plus 5% (12%)." CHASS Agreement § 5.1.5. Because the contract appears to specify a total fixed interest rate of 12%, the Court will disregard the historical prime rate for the purpose of these interest calculations. Furthermore, because the CHASS Agreement specifies an interest rate, the Court will not apply the prejudgment interest rate prescribed under New York state law. See Ret. Accounts, Inc. v. Pacst Realty, LLC, 854 N.Y.S.2d 487, 489 (N.Y. App. Div. 2d Dept. 2008) ("[W]here there is a clear, unambiguous, and unequivocal expression to pay an interest rate higher than the statutory interest rate until the judgment is satisfied, the contractual interest rate is the proper rate to be applied.").

Based upon the above assumptions and information, the Court calculates that Plaintiff is entitled to $18,665,883.25 in interest. The Court calculated this by measuring and adding the interest due on each invoice separately, starting sixty days after each issuance date. The Court also reduced the principal by $437,094.08 on January 1, 2013.

Adding the total interest of $18,665,883.25 to the unpaid principal of $8,230,885.92, the Court finds that Plaintiff is entitled to $26,896,769.17 in damages.[2]

V.      **CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Motion for Default Judgment (Dkt. No. 89) is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court shall enter judgment in favor of Plaintiff and against Defendant in the sum of $26,896,769.17; and it is further

---

[2] If the Court had retroactively applied the 12% interest rate from November 24, 2006—the date that the final invoice became due—to the reduced principal of $8,230,885.92, then Plaintiff would have been entitled to $25,311,439.98 in damages.

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all

parties in accordance with the Local Rules.

**IT IS SO ORDERED.**


DATED:      March 6, 2023
            Albany, New York

_____
LAWRENCE E. KAHN
United States District Judge